**So Ordered.**

Dated: June 12th, 2013

Patricia C. Williams
Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Case No. 09-06194-PCW11 |
| LLS AMERICA, LLC, et al., | |
| Debtor(s). | |
| BRUCE P. KRIEGMAN, solely in his capacity as court-appointing Chapter 11 Trustee for LLS America, LLC, | Adversary No. 11-80299-PCW |
| Plaintiff(s), | MEMORANDUM DECISION RE: PLAINTIFF'S MOTION TO STRIKE DECLARATION OF MARIE RICE (ECF NO. 309) |
| vs. | |
| MARK BIGELOW, et al., | |
| Defendant(s). | |

## ADMISSIBILITY OF RICE DECLARATION

Ms. Marie Rice is a certified auditor and certified fraud examiner, whose declaration was filed in opposition to the plaintiff's motion for summary judgment on common issues, i.e., whether the debtor's actions constituted a Ponzi scheme and

MEMORANDUM DECISION RE: . . . ~ Page 1

when the debtor became insolvent. The issue before the court is whether or not her declaration should be struck.

Plaintiff argues that the declaration should be struck as the defendants did not comply with Fed. R. Civ. P. 26(a)(2) and that the declaration does not meet admissibility standards under Fed. R. Evid. 702.

## ADMISSIBILITY UNDER FED. R. CIV. P. 26(a)(2)

The Amended Case Schedule Order Re Common Issues (ECF No. 214) entered January 29, 2013, required any defendant opposing the plaintiff's motion for summary judgment to identify the defendants' experts and file expert reports per Fed. R. Civ. P. 26(a)(2) by April 22, 2013.[1]

No expert report was provided on April 22, 2013, when Ms. Rice was identified as an expert. However, a copy of her to-be-filed declaration was attached to the expert disclosure. The defendants maintain that the declaration is her report. That being so, attaching a copy of the declaration to the disclosure of the expert witness satisfies that requirement.

Fed. R. Civ. P. 26 further requires that with the disclosure of the expert, the party must disclose in the report or, in this situation, the declaration, the

---

[1] Counsel for the defendants who proffered the declaration withdrew from representation of these defendants effective January 18, 2013 (ECF No. 288) in adversary proceeding Kriegman v. Paul Cooper, et al., No. 11-80093. Current counsel was employed in April, 2013.

compensation to be paid to the expert. The disclosure of Ms. Rice simply states that the compensation had been paid. That is not sufficient to satisfy the requirement of Fed. R. Civ. P. 26(a)(2)(B)(vi). Striking the declaration for that reason is, however, too harsh a penalty.

## ADMISSIBILITY UNDER FED. R. EVID. 702

Plaintiff seeks to strike and render inadmissible for summary judgment purposes the subject declaration as it does not conform with the evidentiary standards established by Fed. R. Evid. 702 nor the Daubert test. Fed. R. Evid. 702 provides that if technical or specialized knowledge would assist the trier-in-fact to determine a fact in issue, a witness qualified by training, or education or other factors may form an opinion regarding that fact and communicate it to the trier-of-fact. In the context of a summary judgment motion, the trier-of-fact or, more accurately, the one who determines whether a genuine issue of fact exists, is the judge.

Clearly, Ms. Rice is personally qualified to be an expert on the common issues and has the professional training and experience to form an opinion as to the debtor's insolvency and whether its operation satisfied the elements necessary to demonstrate a Ponzi scheme.

Fed. R. Evid. 702 further requires that an expert's opinion be based upon sufficient facts or data, be the product of reliable established principles and method,

and that methodology be applied to the facts of the case in a reliable manner. The Daubert decision governs determinations of reliability and stands for the proposition that the court must act as a "gatekeeper" to determine whether expert opinion should be admitted and establishes four factors to consider. Although the principles of the Daubert decision are applicable to this dispute, since that decision addresses only scientific opinions, much of the commentary in the case is not helpful or even applicable when addressing the expert opinion of an accountant.

One of the principles established by Daubert is that for the evidence to be admissible there must be a relationship between the data examined and the opinion of the expert. The court cannot simply rely upon the experts' statements. For example, in the Ninth Circuit case of Guidroz-Brault v. Missouri Pacific R. Co., 254 F.3d 825 (9th Cir. 2001), saboteurs had damaged a portion of a railroad line to cause an accident.

> Without any factual knowledge of how much displacement in centimeters or inches the saboteurs had achieved, Sobek opined that the displaced rail created a visible phenomenon that could be seen at 500 feet from the point of derailment.

Id. at 831.

The court did not admit the expert opinion as it was not sufficiently fact based to be reliable on the fact at issue about which the expert opined. That was particularly true as the opinion was provided in the context of a summary judgment

motion. The same analysis was used by the Eastern Washington District Court in <u>Henricksen v. ConocoPhillips Co.</u>, 605 F.Supp.2d 1142 (E.D. Wash. 2009). If there is an analytical gap between the data examined and the opinion rendered, the opinion is not to be admitted as it is not reliable.

In this dispute, the data relied upon by Ms. Rice was, in addition to the declarations of the plaintiff's experts: (1) the final report of Mr. Hall, the court-appointed examiner in the underlying chapter 11 case (hereinafter "the Examiner"); (2) the plaintiff's statement of undisputed facts; (3) two studies; and (4) 2007 10(k) forms for three payday loan companies. The studies and 10(k) forms were also relied upon by plaintiff's expert, Mr. Harper. Ms. Rice also relied upon a two-page 2005 Balance Sheet and a two-page 2005 Profit and Loss Statement for one of the numerous entities which compose the consolidated debtor. Ms. Rice's opinion is succinctly stated at page 5:

> Messrs. Hall, Quackenbush, and Harper did not have sufficient evidence to determine whether LLS was a Ponzi scheme, unprofitable at all times between 1997 and 2009, or insolvent. . . .

The Examiner spent 21,349 hours developing general information regarding the activities of the various entities which constituted the consolidated debtor, as well as investigating, reconciling and re-creating the financial information of the debtor from 1997 to 2009. The Examiner interviewed Ms. Nelson and the debtor's employees and worked with the debtor's accounting staff. The Examiner, as

explained in his February 9, 2011 Second Interim Report, reviewed information provided by the hundreds of lenders in the proof of claim process. Reconciliation, examination, and re-creation of financial records are tasks commonly performed by examiners appointed by bankruptcy courts. The Examiner filed four reports with the court describing his work and his conclusions regarding the financial affairs of the entities which comprise the consolidated debtor. The declaration of Ms. Rice does not criticize his methodology.

Mr. Quackenbush spent 650 hours reviewing and analyzing the debtor's financial records, including the reconciliations and re-creations of financial records by the Examiner. Mr. Quackenbush also engaged in some undescribed independent reconciliation and re-creation of the financial records. The records examined included (1) the debtor's database, which revealed over 300,000 documents or transactions; (2) another database recording approximately 82,000 transactions; (3) general ledgers of the numerous companies; (4) the Pay Day lending database consisting of thousands of transactions; (5) the debtor's QuickBooks records; (6) the debtor's TRANS system, which recorded financial information; and (7) balance sheets, profit and loss statements, inter-company transfer records and other account information developed and maintained by the debtor. Mr. Quackenbush reviewed 57 bank accounts utilized from 1997 to 2009, including analysis of deposits and withdrawals and payments to and from lenders. Ms. Rice does not criticize Mr.

MEMORANDUM DECISION RE: . . . ~ Page 6
11-80299-FPC    Doc 345    Filed 06/12/13    Entered 06/12/13 13:47:45    Pg 6 of 11

Quackenbush's methodology other than whether the "available bank statements" reviewed were sufficiently complete to ensure the accuracy of his conclusions.

Both the Examiner and Mr. Quackenbush state that financial information from 1997 to 2002 was incomplete and often inaccurate. Mr. Quackenbush relied upon post-petition reconstruction of those records by the Examiner. Also, Mr. Quackenbush himself reconciled information obtained from the federal authorities with the debtor's books. The debtor's internal records were reviewed and compared to financial and other information provided to the British Columbia Securities Commission by debtor and others. Federal tax returns for Ms. Nelson were reviewed. Certain assumptions for the period from 1997 to 2002 were made based upon other financial records of the debtor and information from secondary sources.

Mr. Harper, another accountant providing an opinion on behalf of plaintiff for the summary judgment motion, was asked to conduct an investigation which in his informed professional opinion would allow him to form an opinion on the common issues. He interviewed the Examiner and Mr. Quackenbush regarding their methodology and reviewed their working papers, the TRAN system, the debtor's QuickBooks, all of the Examiner's reports, the reconstituted lender files, payroll records, tax returns, credit card statements and other information. He conducted a

sampling of the financial information to test his conclusions and those of the Examiner.[2]

The actions of the plaintiff's experts demonstrate precisely the expertise and investigation needed when determining if a Ponzi scheme or insolvency exists. It is almost axiomatic that financial records of any debtor who allegedly engaged in a Ponzi scheme are in disarray, are incomplete, do not reconcile, and are complex. As stated in In re Bonham, 251 B.R. 113, 132 (Bankr. D. Alaska 2000), which also involved "claw-back" adversaries by a trustee in an alleged Ponzi scheme,

> The type of expertise truly needed in this case is someone who can take poorly kept, incomplete records, involving commingled funds, and reconstruct the business out of them.

In the Bonham case, the issue of admissibility of the defendants' accounting expert was addressed. The defendants' expert opined that not only had no Ponzi scheme existed, but that the debtor had been solvent for much of the pre-petition period. The defendants' expert had reviewed a significant amount of the debtor's records and even conducted some sampling of others. Unfortunately, one of his fundamental facts arose from a misinterpretation of a pleading filed in the case.

---

[2] At page 16 of the declaration, Ms. Rice criticizes the "cost of capital" applied by Mr. Harper, as it was based on that of four pay day loan companies, which were publically held. At first reading, this seems to be a valid criticism of Mr. Harper's methodology. The reference to "cost of capital" in his declaration, however, is only one basis of his conclusion that "it was obvious from very early in the LLS operation that lenders would not be repaid" and appears in a parenthetical phrase relating back to a discussion of the 40 percent interest rate to be paid to lenders.

Despite the review of financial information and the pages of calculations, the court did not admit the opinion as it did not have sufficient foundation. It was not reliable as it was not well connected to the evidence.

In this dispute, the trustee filed his motion for summary judgment on the common issues on December 3, 2012, and the hearing was scheduled for January 2013. With the plaintiff trustee's motion for summary judgment, the trustee filed declarations of his two accounting experts, Mr. Harper and Mr. Quackenbush. Also filed was a declaration from the Examiner referring to his prior filed reports and restating his conclusions regarding the common issues. Several defendants, including the defendants who proffer Ms. Rice's declaration, requested a continuance of the summary judgment motion. The request was primarily based upon the defendants' contention that they had not had an opportunity to review the financial information relevant to the common issues. The defendants emphasized their need to review that information. The defendants indicated that they needed to depose Mr. Quackenbush, Mr. Harper, and the Examiner. At the time of the request to continue the summary judgment hearing, the defendants questioned whether the financial records were sufficient to support the conclusions of the plaintiff's experts. The motion for continuance was granted to allow the defendants an opportunity to review the financial records and conduct discovery regarding the common issues. A scheduling order was entered postponing the summary judgment hearing until June

MEMORANDUM DECISION RE: . . . ~ Page 9
11-80299-FPC    Doc 345    Filed 06/12/13    Entered 06/12/13 13:47:45    Pg 9 of 11

13, 2013. Despite the five month continuance of the summary judgment hearing, defendants have not deposed any of the plaintiff's experts nor has any of the financial information been reviewed by defendants' expert.

Defendants were provided between January 4, 2013 and March 5, 2013, 19 compact discs and DVDs, and the hard drive of debtor, all of which contained the information relied upon by plaintiff's experts and the Examiner. Ms. Rice did not review any of that information. She reviewed none of the evidence relied upon by the plaintiff's experts, but only their declarations and the summaries attached. She only read the final report of the Examiner. Despite the fact she did not conduct any investigation of the financial records or any other evidence, Ms. Rice submits an opinion that there is insufficient evidence to support the opinions of the plaintiff's expert witnesses.[3]

An opinion that insufficient evidence exists cannot be supported when the evidence has not been reviewed. Ms. Rice's opinion is not reliable or based on sufficient data. It does not meet the requirements of Fed. R. Evid. 702 and cannot be

---

[3] She does rely upon the declaration of Ms. Nelson, which states that the debtor was never insolvent. Ms. Nelson is not qualified to provide that expert opinion, particularly as she states she has no accounting background and merely relies upon others for financial information about the debtor.

admitted. The court will enter an order granting Plaintiff's Motion to Strike Declaration of Marie Rice.

/// END OF MEMORANDUM DECISION ///